[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an action brought by the Plaintiff wife against the Defendant husband for dissolution of their marriage on the ground of irretrievable breakdown. The parties were married on October 7, 1994 at Bedford, New York. The marriage was the first for the Plaintiff and second for the Defendant. The Defendant's first marriage of seven years terminated after five years of litigation, the longest running divorce in New Jersey according to the Defendant. There are no minor children issue of the marriage. The parties appeared at trial and each testified. The court observed their demeanor and evaluated their credibility. In addition, the court reviewed and considered the exhibits, sworn financial affidavits, claims for relief proposed orders and trial memoranda. Based upon the evidence, the court makes the following findings. This action was commenced on April 15, 1999. The court has jurisdiction and all statutory stays have expired. The marriage has irretrievably broken down and judgment may enter dissolving the marriage on this ground.
The Plaintiff is 43 years of age and, except for some stress related problems associated with her relationship with the Defendant, is in good health. She received a Bachelor of Science degree from Bryant College, has taken courses in interior design and Spanish, and has obtained a real estate license. While in college, she began working for American Airlines and has worked as a flight attendant for some 20 years.
The Defendant is 43 years of age and in good health. He attained a high school degree, received computer training during his tour in the Navy, and thereafter worked for several years with IBM. After holding a number of positions, primarily computer related, the Defendant obtained rights to software for screen-based telephones. At the end of 1993, the company promoting this software had total assets of $13,997 and was in danger of failing. In early 1994, prior to the parties' engagement and at Defendant's request, the Plaintiff withdrew funds from her 401k account and obtained additional money from her mother and sister to help CT Page 6106 the Defendant keep his company afloat. As a result of the Defendant's relentless efforts, prior to use of the Plaintiff's money, investors were found for this new company, SmartPhone Services, Inc. (later SmartServ Online) who, in 1994 invested $1,200,000 in the corporation for a 65.2% ownership interest. The Defendant retained 34.8%. His minority interest, as of the date of the marriage, was very speculative and difficult to value.
In addition to his interest in SmartServ, at the time of the marriage, October 7, 1994, the Defendant had $31,000 in a SEP IRA account, $16,912. 34 in a Legg Mason account and two Smith Barney accounts with little or no value. He was also the sole shareholder of a Subchapter S corporation, Darien Development Corporation, which had no real value and owned nothing of value in 1994. In 1995, the Defendant liquidated an IRA account to provide capital necessary to allow SmartServ to continue its research and development phase and to continue its existence.
From 1994 through 1998, the Defendant's earnings ranged from $35,000 to $42,000. In March 1996, and as part of the initial offering of SmartServ, the Defendant received 842,775 shares valued at $5 per share, and thereafter, in April, the parties purchased a home in New Canaan. The Plaintiff is joint obligor on the mortgage note.
In December 1997, prior to the time when the Defendant could legally sell his SmartServ shares, the Defendant filed claims of stock fraud to the National Associations of Security Dealers, sued the company and lost his position as president and chief operating officer. The company's stock price dropped from $4 per share at the end of 1997 to less than $1 per share in 1999. This litigation occupied a significant portion of the Defendant's time, frustrated and aggravated him, and contributed to the problems in the marriage. Having lost his SmartServe position, he worked at home. His irascible and belligerent behavior during this increased time at home, placed an enormous strain on the relationship and, at least in part, caused the Plaintiff to suffer psychological and physical illnesses. In 1998, the Defendant settled his lawsuit against SmartServ and received $305,000 in cash, 125,000 shares of SmartServ stock, and 16, 667 warrants.
In 1999, the Defendant became the Chairman of the Board and Chief Executive Officer of Netrix Corporation. His base salary was $160,000 with provisions for bonuses and options to purchase 1,600,000 shares of common stock, 400,000 to be vested as of March 22, 1999 at an exercise price of $1.50 per share and the balance over three years at $2.75 per share. By way of an acceleration provision, all options vested in December 1999. The options were provided in order to induce the Defendant to accept the position and were not contingent on performance CT Page 6107 goals. By signing the employment agreement, he acquired his right to these options.[1]
Though tax consequences would result if the Defendant exercised his options and sold this stock, no legal restrictions prevent the company from transferring to the Plaintiff some portion of his 1,600,000 options. In addition, there would be no waiting period for her to exercise the options because she would not be considered an insider.
The price of these options was and is volatile. The value of the Defendant's options fluctuated from $13,805,000 to $33,900,000 within a one week period during the trial. These options are currently worth $13,900,000.
In the summer of 1999, the Defendant was required, as part of his job, to move to the Virginia area. In October and November of 1999, he sold some $800,000 worth of shares of his SmartServ stock, without permission from the court or his wife, and used the proceeds, in part, to purchase a home in Virginia. He had neither the consent of the Plaintiff nor leave of court for this purchase. At this time, the parties were attempting to resolve financial issues relating to their divorce, and though progress was made, both understood that a formal agreement would be required and that this was a condition precedent to any binding obligations. Though, without concluding an agreement, he sold this stock, purchased his home, and made other expenditures without regard for any potential obligations imposed by the automatic orders, in light of the fact that his new Netrix position provided an immediate substantial financial benefit for both parties, required relocation, and that the new Virginia home is a marital asset, neither his sale of SmartServ stock nor his purchase of this home were unreasonable or violations of the automatic orders.
The Defendant's treatment of the Plaintiff was poor at the start of the marriage and worse thereafter. Though the Plaintiff is willing to share some of the responsibility for the breakdown of this marriage, the court attributes most, if not all, of the blame to the Defendant. The Defendant exhibited little, if any, feelings or respect for the Plaintiff and treated her very badly. His short temper, nasty disposition and arrogance made life unbearable for the Plaintiff. She suffered, and continues to suffer, from the physical and psychological problems as a result of his behavior. On the other hand, the Plaintiff expected and worked toward a loving relationship. She tried to satisfy her husband's desires, and, when his business venture was under financial pressure, offered to contribute her funds and funds from her family to his SmartServ enterprise. At his request, or demand, she used her earnings to pay for normal household expenses and paid for rugs, CT Page 6108 furniture, curtains, wallpaper, paint for their townhouse and for groceries. At the same time, the Defendant deposited his funds in his private account, refused to establish a joint bank account and required the Plaintiff to make automobile payments of $600 per month for five years. Throughout all of this time period, until the Defendant vacated the family residence in December 1999, the Plaintiff provided, in addition to her financial support, emotional support and a well-kept home.
The Defendant's assets, as a result of the volatility of the stock market, fluctuated significantly over the course of the trial. New financial affidavits were presented by the Defendant daily. The defendant's total assets varied between approximately $19 million and $43 million. New affidavits with current information were provided at a hearing on May 19, 2000.
The court has carefully considered the criteria set forth in General Statutes §§ 46b-81 and 46b-82 and the applicable case law in reaching the decisions reflected in the orders that follow:
 1. The marriage of the parties, having broken down irretrievably, is hereby dissolved.
 2. The Defendant shall pay the Plaintiff a lump sum alimony in the amount of $2,000,000 payable as follows: $200,000 on or before May 31, 2000 and $1,800,000 on or before July 31, 2000.
 3. The Defendant shall quitclaim to the Plaintiff all of his title and interest in and to the real property located at 23 Lakeview Avenue, Unit 2B, New Canaan, Connecticut.
 4. The Plaintiff shall have exclusive possession of said real property and shall be responsible for and pay the monthly payments on the mortgage, real property taxes, and other related expenses as they come due. The Plaintiff shall indemnify and hold the Defendant harmless from any debt, liability, loss or damage arising from such liabilities.
 5. The Defendant shall retain all his right, title, and interest in and to the real property located at 1270 Cobble Pond Way, Vienna, Virginia free from any claim of the Plaintiff The Defendant CT Page 6109 shall have exclusive possession of said real property and he shall continue to be responsible for and pay the monthly payments on any and all mortgages, real property taxes and any other related expenses as they come due. The Defendant shall indemnify and hold the Plaintiff harmless from any debt, liability, loss or damage arising from all such liabilities.
 6. Each party shall own, have and enjoy, completely free of any claim or right of the other party, any and all furniture, furnishings, jewelry and other personal effects which are now owned individually by or in the sole possession of him or her. In the event that there is any dispute regarding this issue, the matter shall be mediated by the Family Relations office, and if the matter is not resolved, it shall be returned to the court for resolution.
 7. The Plaintiff shall retain all her right, title and interest in and to her American Airlines 401 (k) free and clear from any claim of the husband.
 8. The Plaintiff shall retain all her right, title and interest in and to her First Union checking account, her American Airlines Credit Union savings account, her Janis Mercury fund and her Janis Special Situation fund free from any claim of the Defendant; and the Defendant shall retain all his right, title and interest in and to his Citibank checking account.
 9. The Defendant shall retain all his right, title and interest in and to his shares and warrants for SmartServ (originally SmartPhone Services, Inc., later SmartPhone Communications, and later SmartServ Online) (BT Alex Brown Account). The Defendant shall retain his interest in his Donaldson, Lufkin and Jenrette account, his Solomon Smith Barney investment account, and his Keytrade account free from any claim of the Plaintiff.
 10. The Defendant shall retain his interest in his Netrix options, free from any claim of the Plaintiff.
 11. The Plaintiff shall retain all her right, title and interest in and to her American Airlines term life insurance free of any claim of the Defendant; and the Defendant shall retain all his right, title and interest in and to his one Monarch and three Guardian life insurance policies free from any claim of the Plaintiff.
 12. The Plaintiff shall retain her right to her leased 1997 Audi A6 automobile, free from any claim of the Defendant; and the Defendant shall retain all his right, title and interest in and to his 1999 Porsche 911 and his 2000 Dodge Durango free from any claim of the Plaintiff. Each party shall be liable for any and all lease and loan payments, insurance payments and other costs and expenses associated with their respective vehicles and shall indemnify and hold the other harmless from same.
 13. The parties, each having individual major medical and hospitalization insurance coverage available through their employment, shall each be responsible for his or her own medical insurance and related expenses.
 14. Except as may otherwise be provided herein, each party shall be responsible for his or her own liabilities and shall hold each other free, harmless, and indemnified from any and all such liabilities.
 15. Each party shall be responsible for their own attorney's fees.
CT Page 6110
 16. The parties shall file separate Federal and State income tax returns for the calendar year 1999 unless both shall agree to file joint returns and the Defendant shall be entitled to any and all mortgage, interest and real property tax deductions relating to the New Canaan, Connecticut and Vienna, Virginia residences paid by him.
 17. The Plaintiff's birth name of Lauren McCusker is hereby restored.
HILLER, J.